**Felicia BYARS, Appellant,**

v.

**CITY OF AUSTIN, Camille Cates Barnett, and Overlin Rodriguez, Individually and in Their Capacities as Officers of the City of Austin, Appellees.**

**No. 03–94–00211–CV.**

Court of Appeals of Texas, Austin.

March 29, 1995.

Publication Ordered May 3, 1995.

Hubert L. Gill [Signed Brief for appellant], Schaubhut & Gill, Austin.

Andrew F. Martin, City Atty., Connie Odé [Signed Brief for Appellees], Asst. City Atty., Austin.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellant Felicia Byars filed suit against the City of Austin, former City Manager Camille Barnett, and Byars's former supervisor, Overlin Rodriguez (collectively, "appellees"), alleging breach of her employment contract, violation of her substantive and procedural due process rights, and reverse racial discrimination. Appellees moved for summary judgment, claiming that Byars had no constitutionally protected interest in her employment and, therefore, no procedural due process rights with respect to her termination. Appellees further urged that Byars's discrimination claim under the Texas Commission on Human Rights Act was barred by the Act's limitation period. The trial court granted appellees' motion. Byars appeals, contending that: (1) the trial court erred in

finding that Byars had no protected property interest in her job with the City and that no due process rights attached as a result; (2) the City's failure to follow its own charter and rules constitutes a separate cause of action under which she is entitled to recover; and (3) her discrimination claim was not barred. We will affirm the trial court's judgment.

## BACKGROUND

Felicia Byars was hired as a clerk in the City of Austin Municipal Court Clerk's Office on November 13, 1989. Her duties included the processing of traffic tickets and Class C misdemeanors. On several occasions, police officers asked for her assistance in clearing traffic tickets they had received. Byars initially refused the officers' requests. Another employee allegedly ordered Byars to dismiss tickets and waive fines for police officers. Later, Byars was assigned the duty of warrant verification and was temporarily issued a co-worker's computer password. On October 18, 1990, Rodriguez terminated Byars because she misused the co-worker's password, dismissed a police officer's traffic tickets, and failed to deposit the officer's traffic fines.

Byars filed a grievance pursuant to the personnel policies manual for city employees. On January 29, 1991, the grievance committee recommended that Byars be reinstated to her job without back pay. The City appealed this recommendation to the City Manager. On April 10, 1991, the City Manager refused to follow the grievance committee's recommendation and upheld Byars's termination.

On August 13, 1991, Byars filed a charge of discrimination with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). Byars alleged that because two Hispanic employees in the clerk's office were accused of theft and had not been terminated, her termination was based on reverse racial discrimination against Caucasians. The EEOC determined that the City's conduct did not violate Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e to 2000e–17 (1988).

On May 6, 1992, Byars filed suit in district court.

## DISCUSSION

The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubt resolved in her favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In her first point of error, Byars contends that the combination of the Austin City Charter and the City of Austin Personnel Policies Manual grants her a protected property right to employment which cannot be taken from her without due process of law. Article IX, Section 3 of the city charter provides in pertinent part:

> The administration of the classified service of the city shall be governed by written rules and regulations to be known as "Personnel Policies." ... All policies shall have the force and effect of law.

In February 1977, the Austin City Council adopted the personnel policies manual, which was revised in August 1985.

The City Manager's cover letter, included in the policy manual, states:

> This Personnel Policies Handbook contains guidelines for all City employees. These policies are not a legal contract, but they are meant to provide a positive approach to understanding your new job.

The manual contains a nonexclusive list of bases for disciplinary action [1] and states the "recommended steps" for progressive disciplinary action. Dismissal, the final step in the disciplinary process, "would normally occur only when other disciplinary action has

---

1. The bases for disciplinary action include, but are not limited to: (1) absenteeism, (2) insubordination, (3) misconduct, and (4) violation of personnel policy.

failed to achieve the needed results." The manual also states:

> This section should not be interpreted to eliminate the discretionary factors all employees, whether supervisory, non-supervisory, or management, must rely on for discharging their designated duties and responsibilities. This policy should in no way prevent the Department Head from taking immediate action when the nature of the offense warrants such action. The following offenses will be grounds for immediate dismissal:
>
> (1) Use of intoxicants and/or illegal drugs while on duty,
>
> (2) Falsification of official City records,
>
> (3) Theft, willful damage and/or unauthorized use of City Property,
>
> (4) Willful failure to follow established safety guidelines when such failure could result in injury to the employee, co-worker, or other persons.

Further, the handbook outlines the grievance procedure available to employees. The grievance committee "prepare[s] a recommendation to the City Manager, who will make a final disposition of the grievance." The Austin City Charter provides that the City Manager "shall have the power and shall be required to: [a]ppoint and remove any officer or employee of the City." Austin, Tex., CODES, Charter V, § 2(1) (1994).

Texas is an employment at-will state; employment for an indefinite term may be terminated at will and without cause by either party. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex. 1993); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (Tex.1888). Any modification of at-will employment status must be based on express rather than implied agreements. *Mott v. Montgomery County,* 882 S.W.2d 635, 638 (Tex.App.—Beaumont 1994, writ denied); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 538–39 (Tex. App.—Corpus Christi 1982, no writ). The express agreement to modify must be clear and specific. *Martinez v. Hardy,* 864 S.W.2d 767, 775 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Whitehead v. University of Tex. Health Science Ctr.,* 854 S.W.2d 175, 181 (Tex.App.—San Antonio 1993, no writ). In the context of public employment, any ambiguity in the grant of a property interest in employment is resolved in favor of the state. *Batterton v. Texas Gen. Land Office,* 783 F.2d 1220, 1223 (5th Cir.1986).

Byars argues that because the city charter orders the City to adopt personnel policies which have the force and effect of law, the employee manual is elevated from a mere handbook to "legislative status."[2] Although the charter requires the City to adopt personnel policies, the charter also empowers and requires the City Manager to remove city employees. The personnel policies

---

**2.** Byars cites several cases in support of her claim that personnel policies with legislative status create a property interest under both Texas and federal law. *See Rosow v. City of San Antonio,* 734 S.W.2d 659 (Tex.1987); *Richardson v. City of Pasadena,* 513 S.W.2d 1 (Tex.1974); *Davis v. City of San Antonio,* 739 S.W.2d 394 (Tex. App.—San Antonio 1987), *rev'd on other grounds,* 752 S.W.2d 518 (Tex.1988); *Noe v. Lopez,* 721 S.W.2d 459 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987); *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir.1983); *Glagola v. North Tex. Mun. Water Dist.,* 705 F.Supp. 1220 (E.D.Tex.1989).

However, these cases are distinguishable from Byars's cause. *Noe, Richardson, Glagola, Bueno,* and *Schaper* each dealt with a statutory or personnel policy that expressly stated the employee could only be terminated for cause. In *Noe,* a building code adopted by ordinance in Kingsville, Texas, expressly provided that the building official's "appointment shall continue during

good behavior and satisfactory service. He shall not be removed from office except for cause after full opportunity has been given to him to be heard on specific charges." *Noe,* 721 S.W.2d at 461. In *Richardson,* the controlling statute guaranteed firemen "permanent tenure of employment as public servants." *Richardson,* 513 S.W.2d at 3. The employment manuals in *Glagola, Bueno,* and *Schaper* stated that employees could only be terminated for just cause.

*Rosow* and *Davis* dealt with an employee's dismissal under the City of San Antonio's Civil Service Rules, which specify eighteen grounds for removal, suspension, and demotion of classified civil employees. The courts in those cases held that the enumeration of the grounds for dismissal and the rules' requirement that notice of cause be given gave rise to an expectation of continued employment constituting a property interest. *Rosow,* 734 S.W.2d at 660–61; *Davis,* 739 S.W.2d at 396. Austin's personnel policies do not limit an employee's termination to "just cause" or to specifically enumerated reasons.

adopted by the City pursuant to the charter allow the City Manager to make the final disposition of all grievances. Neither the charter nor the policies limit the power or discretion of the City Manager in her removal of city employees.

The personnel policies emphasize the City's discretion in disciplinary and termination decisions. The cover letter from the City Manager expressly disclaims the creation of an employment contract with the employee and stresses that the handbook merely provides "guidelines." The manual's section on employee discipline explicitly reserves discretion in disciplinary decisions. The grounds for disciplinary action are nonexclusive. The manual lists "recommended steps" for disciplinary action and states that dismissal would "normally occur" after the exhaustion of other methods. However, the manual also allows the department head to take immediate action when the offense warrants immediate dismissal.

Far from expressly creating a contract[3] or a protected interest in continued employment, the personnel policies manual and the Austin City Charter clearly protect the City's discretion in termination decisions. Byars emphasizes that the personnel policies have the "force and effect of law" under the charter. However, because the policies grant discretion to department heads and final authority to the City Manager, it is this discretion and authority which has the force and effect of law. This language does not expressly, clearly, and specifically modify the at-will employment status of city employees. *See Martinez*, 864 S.W.2d at 775.

■ The existence of a grievance procedure for employee complaints does not affect our decision. Hearings and grievance procedures may be granted for reasons other than protection against deprivation of a substantive right; such procedures do not create a property interest in the employee's job. *Renken v. Harris County*, 808 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1991, no writ); *see also Evans v. City of Dallas*, 861 F.2d 846, 850 (5th Cir.1988) (holding that

existence of procedures cannot be used to bootstrap a finding of substantive entitlement). In fact, the manual in this case states that the policies do not create a contract or limit the City's power to terminate an employee in any way. Because the existence of grievance procedures alone does not create substantive property rights or alter an employee's at-will status, Byars had no protected property interest in her employment that would entitle her to more procedural protection than she received. *See Mott*, 882 S.W.2d at 638. We overrule Byars's first point of error.

In her second point of error, Byars contends that the trial court erred in granting appellees' motion for summary judgment because the City's failure to follow its own charter and rules constitutes a separate cause of action. Byars maintains that she has a tort cause of action based on the City's actions independent of the cause of action for the City's alleged violation of her due process rights. *See Grounds v. Tolar Indep. Sch. Dist.*, 872 S.W.2d 823, 826 (Tex.App.—Fort Worth 1994, writ denied). Byars's response to appellees' motion for summary judgment contains only two subsections: (1) Due Process and (2) Discrimination Claims. Byars does discuss appellees' failure to follow the personnel policies procedures; however, she never argues that this failure to adhere to procedure constitutes a tort for which she is entitled to recover damages.

■ A party on appeal is limited to those issues raised in the motion for and response to summary judgment. *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex.1992); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675–77 (Tex.1979); *Manoogian v. Lake Forest Co.*, 652 S.W.2d 816, 819 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Because Byars failed to raise this issue in her response to appellees' motion for summary judgment, she has not preserved the issue for appeal. We overrule Byars's second point of error.

---

**3.** It is unclear from Byars's brief whether she is arguing that the policy manual creates an employment contract. We will assume without deciding that a city can alter the at-will status of a public employee by contract.

Byars alleges in her final point of error that the trial court erred in granting appellees' motion for summary judgment because her discrimination claim under the Texas Commission on Human Rights Act was not barred by the limitations period. The Act provides that a complaint must be filed with the Commission "within 180 days after the date the alleged unlawful employment practice occurred." Tex.Rev.Civ.Stat. Ann. art. 5221k, § 6.01(a) (West 1987). Byars claims that the discriminatory event occurred on April 10, 1991 when the City Manager issued her decision upholding Byars's termination and not on October 18, 1990 when Rodriguez initially terminated Byars.

Byars's allegations focus on her initial termination. Byars, who is white, claims that two Hispanic employees of the clerk's office were accused of theft but were not terminated. In her complaint with the Texas Commission on Human Rights, Byars cites the "date most recent or continuing discrimination took place" as October 18, 1990. Furthermore, Byars does not claim that the City Manager chose to reinstate Hispanic but not white employees, nor does she claim that the City Manager followed the grievance committee's recommendations only when they were favorable to Hispanic employees. Byars has never alleged or established a factual basis of discrimination within the grievance procedure or with respect to the City Manager's final decisions.

Given Byars's allegations, we conclude that the discrimination, if any, occurred when Byars was terminated on October 18, 1990. The limitations period was not tolled while Byars utilized the grievance procedures. *See International Union of Elec., Radio and Mach. Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (holding that an employee's decision to pursue a grievance proceeding following his termination does not toll statute of limitations in a Title VII employment discrimination case); *see also Benavides v. Moore,* 848 S.W.2d 190, 193 (Tex.App.—Corpus Christi 1992, writ denied) (stating that when Texas case law fails to address an issue regarding Texas Human Rights Act, courts may look to

federal Title VII law for guidance). Because Byars filed her complaint with the Commission on August 13, 1991, more than 180 days after her dismissal, her claim is time-barred. We overrule Byars's third point of error.

We conclude that the trial court properly granted appellees' motion for summary judgment and affirm the judgment of the trial court.