**Dennis W. SCHOONOVER,**
**Plaintiff–Appellant,**

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE and Local 24, Freight Drivers, Dockworkers and Helpers, Defendants–Appellees.**

**No. 93–4147.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1994.

Decided March 13, 1995.

Sidney N. Freeman (argued and briefed), McNamara & Freeman, Uniontown, OH, for plaintiff-appellant.

Edward C. Kaminski (argued and briefed), Buckingham, Doolittle & Burroughs and George B. Vasko (argued and briefed), Vasko, Howard, Morris, Roberto & Rose, Akron, OH, for defendants-appellees.

Before MERRITT, Chief Judge; KEITH and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Dennis Schoonover appeals a judgment as a matter of law in favor of Consolidated Freightways Corporation of Delaware and Local 24, Freight Drivers, Dockworkers and Helpers. The district court granted the judgment at the close of Schoonover's case because it believed that Schoonover had failed to file his complaint within the required statute of limitations. For the reasons set out below, we reverse.

## I

Consolidated Freightways fired Schoonover on October 29, 1987 for intentionally abusing company property by allegedly breaking a brake pedal on one of Consolidated's trucks. At the time of the alleged incident, Schoonover drove a truck for Consolidated on an over-the-road route between Richfield, Ohio and Milwaukee, Wisconsin.

On October 15, 1987, Schoonover went to the truck "ready line" at Consolidated's Richfield depot to pick up his assigned tractor and trailer. He did a normal pre-run inspection of the truck, including a check of the braking system for air leaks. After taking the truck to the garage for some minor repairs, Schoonover set out on his run.

Shortly after leaving Consolidated, Schoonover approached a traffic light and attempted to brake. Schoonover alleges that he slid his foot from the accelerator to the brake pedal, only to discover nothing was there. He used

the emergency brakes to stop the truck. Schoonover pulled the truck off the road, and returned to the depot where Consolidated gave him another truck.

On October 20, 1987, Schoonover received notice that Consolidated was investigating the cause of the breakdown and would hold a hearing. Consolidated held the hearing at the Richfield facility on October 29, 1987. Consolidated's manager of linehaul personnel, Thomas Kenny, presided. Union representatives were present, but Schoonover alleges that they never contacted him before the hearing, nor did they present any evidence on his behalf. At the end of the hearing, Consolidated fired Schoonover for abuse of company property.

Schoonover then filed an application for grievance arbitration before the Ohio State Joint Grievance Committee, the arbitration body created by the collective bargaining agreement. The Committee set a hearing for November 18, 1987. After both parties presented their cases, the Committee asked them to leave the hearing room. At trial, Schoonover testified that "approximately five to ten minutes later we were recalled and I was told my discharge was sustained." Schoonover also testified that an arbitrator announced that an "official notification" of the Grievance Committee's findings would be sent to the parties by mail. Schoonover received his notice by mail on November 24, 1987.

Schoonover filed his complaint on May 20, 1988. In his complaint and amended complaint, Schoonover alleged that he learned of the Grievance Committee's decision sustaining his discharge on November 24, 1987. At the close of Schoonover's case, and in light of his testimony, Consolidated and the Local moved pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law. They argued that

Schoonover's testimony demonstrated that he learned of the arbitration decision on November 18, 1987. Therefore, the filing of his original complaint was beyond the six-month statute of limitations. The district court granted the motions.

## II

■ The appropriate statute of limitations for a hybrid § 301/duty of fair representation action is the six-month period provided in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *Del-Costello,* the Supreme Court held that for purposes of a hybrid § 301/unfair representation action, the statute of limitations begins to run when the claimant knows or should have known of the union's alleged breach of its duty of fair representation. *Id.* at 170–72, 103 S.Ct. at 2293–95; *Dowty v. Pioneer Rural Elec. Co-op., Inc.,* 770 F.2d 52, 56 (6th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985). *See also Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 803–04 (6th Cir.1990); *Ryan v. General Motors Corp.,* 929 F.2d 1105, 1111 (6th Cir.1989); *Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 578–81 (6th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988); *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985).

■ Generally, "a cause of action accrues when the plaintiff could first have successfully maintained a suit based on that cause of action." *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 163 (2d Cir. 1989) (citations omitted). Therefore, a party is not required to sue before the arbitration panel renders its final decision.[1] "The better course is to permit the plaintiff claiming in-

---

1. Of course this statement does not apply to those situations where the breach of fair representation stems from the union's failure to bring the arbitration claim or the union's decision to abandon it before its resolution. In those circumstances, the law looks to when the grievant knew or should have known that the union had elected to proceed no further. The statute of limitations then starts from that point. *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1236 (6th Cir.1987) ("employee's hybrid cause of action may arise when the Union takes an unequivocal position that it will not seek arbitration"); *See also Sosbe v. Delco Elecs. Div. of G.M.C.,* 830 F.2d 83, 87 (7th Cir.1987); *Demchik v. General Motors Corp.,* 821 F.2d 102, 105–06 (2d Cir.1987); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 669 (9th Cir.1985); *Taylor v. Ford Motor Co.,* 761 F.2d 931, 934 (3rd Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986).

adequate representation in an arbitration to wait until there has been some adverse outcome in the arbitration before seeking the intervention of a federal court." *Ghartey*, 869 F.2d at 163. *See also Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986) ("where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award"); *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 n. 7 (11th Cir.1985) ("knowledge of the union's breach can normally be attributed to the employee at the moment when he learns of the unfavorable award").

Simply stated, requiring exhaustion of the grievance process is appropriate because the arbitration award may make the employee whole, in spite of even the most egregious union failures. *See Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir.1990). To require otherwise would undermine the strong national policy favoring nonjudicial resolution of labor disputes by penalizing those who try to resolve their disputes through the grievance process before filing suit in federal court. *Id.* at 422.

## III

■ The narrowly drawn issue is whether the oral statement by the arbitration panel can fairly be called the arbitration award. We conclude it cannot. In particular, we note two factors. First, the rules of the governing body itself require that the decision of the panel be reduced to writing. Second, the result was in fact memorialized in writing. Underlying these reasons is a reluctance to predicate federal jurisdiction on the ad hoc, unrecorded statements of an arbitration panel.

Article 3, Paragraph 16 of the "Organization and Rules of Procedure" of the Ohio Joint State Grievance Committees states that

"[d]ecisions rendered by the Joint State Committees shall be reduced to writing and signed by the Co–Chairman and the Secretary." [2] Furthermore, in this case there was a written decision. The decision, while not lengthy, describes the parties, names the Union and employer representatives, and notes that Schoonover participated in the hearing. It includes a brief summary of the charges and the defenses offered or relief requested. Finally, it includes a decision, and a note that it was unanimous. The panel held that "[b]ased on the evidence presented, the discharge of D. Schoonover is sustained."

This view is also supported by our reluctance to predicate federal jurisdiction on the unrecorded statements of an arbitration panel. Ohio Revised Code § 2711.08 is evidence of the primacy of the written decision. Section 2711.08 requires that an award in an arbitration proceeding must be in writing and must be signed by a majority of the arbitrators.[3] *See, e.g., Lockhart v. American Reserve Ins. Co.*, 2 Ohio App.3d 99, 440 N.E.2d 1210 (1981). While the Ohio statute is not binding authority, it nonetheless provides evidence of the bias against unrecorded arbitration awards.

Consolidated's reliance on prior opinions in this area is unpersuasive. Each of these cases is readily distinguishable on the same grounds. For example, in *Dowty v. Pioneer Rural Elec. Co-op., Inc.*, 770 F.2d 52 (6th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985), there was no doubt that the arbitration body in question had rendered its final decision and award. The panel rendered the arbitration decision on June 24, 1981. The Union gave notice to the plaintiff on July 7th, and the plaintiff received official notice on July 10th. The statute began running on July 7th. *Id.* at 54–55.

■ Arbitration decisions fall into three categories: those reduced to writing; those

---

**2.** Apparently in recognition of the problem posed by unrecorded decision-making, the rules were amended, pursuant to a national directive, in October of 1991. The amendment states that "the state committees are instructed to record, (tape or stenographic) all discharge cases." These recordings are to be retained for four

months and are available pursuant to a subpoena.

**3.** The Ohio Statute is drawn from the Uniform Arbitration Act, which has been adopted in approximately 37 states.

that, while not reduced to writing, have been preserved in an audio or stenographic record; and those decisions for which memory is the only basis for jurisdiction and review. Obviously, parties can generally arrange their affairs however they please. Labor and management can choose to make any type of decision the final enforceable order of the panel. And if they prefer to rely on memory alone that is their right. Here however, the arbitration rules require a written decision and there was a written decision, both of which are in line with the common sense bias in favor of written or recorded dispositions.[4] Therefore, we conclude that there was no formal arbitration decision until the panel reduced it to writing as required by its rules, and as it eventually did. It is from this point that the statute of limitations begins to run.

■ To do otherwise would require a plaintiff to convince a judge that federal jurisdiction lies based only on his asserted memory of the decision. For if the appellees are correct, Schoonover could have sued the same day he heard the panel's remarks, based on his understanding of them. A district judge would be understandably reluctant to entertain such a suit in general, let alone where the arbitration rules purport to require a written decision. We hold that while formal notice of a decision to the grievant is not required, a formal decision of some sort by the panel is required to begin the running of the statute of limitations. The oral statements made by the panel in this case do not constitute such a formal decision.

### IV

The judgment of the district court is **REVERSED.** The matter is **REMANDED** to the district court for proceedings consistent with this opinion.

**4.** *See* Samuel Goldwyn ("A verbal contract isn't worth the paper it's written on") (attributed).