NUMBER 13-04-252-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

TEXAS A&M UNIVERSITY, 
CORPUS CHRISTI,                                                                      Appellant,

v.
 
NEAL VANZANTE,                                                                      Appellee.
                                                                                                                                      

On appeal from the County Court at Law No. 1 
of Nueces County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Yañez, Castillo and Garza 
Opinion by Justice Garza

          This is an appeal from the denial of a plea to the jurisdiction. Appellee, Neal
Vanzante, sued appellant, Texas A&M University, Corpus Christi, for employment
discrimination under the Texas Commission on Human Rights Act (“the Act”). See Tex.
Lab. Code Ann. § 21.001, et seq. (Vernon 1996). Appellant subsequently filed a plea to
the jurisdiction, arguing that the trial court lacked subject matter jurisdiction because
appellee did not file an administrative complaint within one hundred and eighty days of the
alleged unlawful employment practice as required by the Act. See Tex. Lab. Code Ann.
§ 21.202 (Vernon 1996). After reviewing the arguments and evidence presented by both
parties, the trial court denied appellant’s plea to the jurisdiction. Appellant now appeals to
this Court.


 We conclude that appellee filed his administrative complaint within the time
period required by law and therefore affirm the trial court’s order. 
I. Background
          The facts relevant to this appeal are largely uncontested. Neal Vanzante is a
professor of accounting at Texas A&M University, Kingsville. In December 2000, Vanzante
applied for a position at Texas A&M University, Corpus Christi (“the University”) to
commence in the fall of 2001. In January 2001, Moustafa Abdelsamad, Dean of the
College of Business at the University, instructed Vanzante that communications regarding
his application for employment should be directed to Dr. Janet W. Tillinger, chair of the
accounting department and chair of the department’s search and selection committee. 
Sometime in April 2001, Vanzante learned through a third party that the position had been
offered to a professor named Timothy McCoy. On April 11, 2001, Vanzante emailed Dean
Abdelsamad, complaining that his application had “not received due consideration.” 
Vanzante complained, “[I]t is difficult to understand how someone with my experience and
credentials was not invited for an interview (especially given where I live) when compared
to the experience and credentials of those ultimately hired.” On April 16, 2001, Dean
Abdelsamad emailed in response, “Thanks for keeping me informed. As you may know,
we filled all positions this year. It is [sic] excellent outcome considering the tight market for
faculty in business.” In a letter dated June 11, 2001, Dr. Tillinger informed Vanzante that
he was not selected for any of the advertised positions and thanked him for applying to the
College of Business. Vanzante claims that he received Dr. Tillinger’s letter on June 21,
2001. 
          On December 7, 2001, Vanzante completed an employment intake questionnaire
supplied by the Corpus Christi Human Relations Commission (“the Commission”) in which
he complained of employment discrimination by the University. On December 17, 2001,
Vanzante filed a verified charge of discrimination with the Commission. In a letter dated
October 2, 2002, the Texas Commission on Human Rights informed Vanzante of his right
to bring a private civil action in state court against the University. The letter advised
Vanzante that any suit must be filed within sixty days of his receipt of the letter. Vanzante
subsequently filed suit against the University.
II. Plea to the Jurisdiction
          In its sole issue before this Court, the University argues that the trial court erred by
denying its plea to the jurisdiction. According to the University, the trial court has no
subject matter jurisdiction over the suit because Vanzante failed to file an administrative
charge of discrimination within one hundred and eighty days after the alleged unlawful
employment practice as required by the Act. See id.
          A person claiming to be aggrieved by an unlawful employment practice may file a
complaint with the Human Rights Commission. Schroeder v. Texas Iron Works, Inc., 813
S.W.2d 483, 486 (Tex. 1991). Such a complaint must be filed within one hundred and
eighty days after the date the alleged practice occurred. Id. This time limit has been held
to be mandatory and jurisdictional. Id. If the statutory guidelines have not been followed,
the suit must be dismissed for lack of jurisdiction. See id. at 488. A. Standard of Review
          Whether a court has subject matter jurisdiction is a legal question subject to de novo
review. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). When
reviewing a trial court’s order on a plea to the jurisdiction, we construe the pleadings in the
plaintiff’s favor and look to the pleader’s intent. See County of Cameron v. Brown, 80
S.W.3d 549, 555 (Tex. 2002). We are allowed to consider evidence pertinent to the
jurisdictional inquiry. See id.  
B. Analysis
          As stated by the University, the key issue in this appeal is when the limitations
period started to run. The University argues that the limitations period commenced to run
no later than April 16, 2001, when Dean Abdelsamad informed Vanzante that all positions
at the University had been filled. If the University is correct, the limitations period expired
on October 13, 2001 and Vanzante’s administrative complaint was filed untimely. See §
21.202. According to Vanzante, the limitations period did not begin to run until June 21,
2001, when he received Dr. Tillinger’s letter informing him that he was not selected for any
of the University’s advertised positions. If Vanzante is correct, the limitations period did not
expire until December 18, 2001 and his administrative complaint was timely filed. See id.
          The University relies on six cases to support its position. See Del. State Coll. v.
Ricks, 449 U.S. 250, 258 (1980); Schoonover v. Consol. Freightways Corp. of Del., 49 F.3d
219, 223 (6th Cir. 1995, cert. denied); Specialty Retailers v. DeMoranville, 933 S.W.2d
490, 492 (Tex. 1996) (per curiam); Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78,
83 (Tex. App.—Fort Worth 2003, no pet.); Czerwinski v. Univ. of Tex. Health Sci. Ctr., 116
S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); Byars v. City of
Austin, 910 S.W.2d 520, 525 (Tex. App.—Austin 1995, writ denied). None of the cases
cited by the University compels this Court to conclude that the limitations period
commenced to run on April 16, 2001. To the contrary, the cases cited by the University
indicate that the limitations period began to run no earlier than June 21, 2001, when
Vanzante received notice from the University’s search and selection committee that his
application for employment had been officially denied. 
          In Ricks, the United States Supreme Court was asked to determine whether a
college professor timely complained under the civil rights laws that he had been denied
academic tenure because of his national origin. Ricks, 449 U.S. at 252. Title VII, under
which Ricks had filed suit, requires aggrieved persons to file a complaint with the Equal
Employment Opportunity Commission (“EEOC”) “within one hundred and eighty days after
the alleged unlawful employment practice occurred.” See id. at 256 (citing 42 U. S. C. §
2000e-5(e)). To determine the timeliness of Ricks’ EEOC complaint, the Supreme Court
had to identify precisely the “unlawful employment practice” of which Ricks complained. 
See id. at 257. The Supreme Court noted that although Ricks’ complaint only alleged a
discriminatory denial of academic tenure, Ricks also complained of wrongful discharge at
oral argument. See id. The Supreme Court rejected the wrongful-termination claim and
held that “the only alleged discrimination occurred—and the filing limitations periods
therefore commenced—at the time the tenure decision was made and communicated to
Ricks.” Id. at 258. In reaching this holding, the Supreme Court noted that “[t]he application
of the general principles discussed herein necessarily must be made on a case-by-case
basis.” Id. at 258 n.9. Ultimately, the Supreme Court did not decide when the unlawful
employment practice occurred in Ricks but instead concluded that the district court’s
decision was not erroneous because Ricks’ complaint was untimely regardless of which
of the disputed dates was correct. See id. at 262, 262 n.17. The Supreme Court
cautioned that “the limitations periods should not commence to run so soon that it becomes
difficult for a layman to invoke the protection of the civil rights statutes.” Id. at 262 n.16. 
Given this admonishment and the Supreme Court’s emphasis that notice of the
employment decision should be predicated on a formal and official decision, we conclude
that the Ricks opinion does not favor the University. 
          The University argues that the limitations period should run from the date of Dean
Abdelsamad’s email to Vanzante, but we conclude that the University’s employment
decision was communicated to Vanzante by Dr. Tillinger’s letter, not by Dean
Abdelsamad’s email. Dean Abdelsamad’s email simply responded to Vanzante’s email,
in which Vanzante complained (based on information from an unnamed third party) that
his application had not been given “due consideration.” Rather than informing Vanzante
that his application had in fact been denied, Dean Abdelsamad simply thanked Vanzante
“for keeping . . . [him] informed.” Dean Abdelsamad’s email was not unequivocal notice
that Vanzante’s application had been rejected, as the University argues, because it said
only that all positions had been filled. Moreover, Vanzante had been advised that any
communication regarding his application should be directed to the search and selection
committee, which suggests that the committee was the official decision-making entity. 
     In Schoonover, the next case cited by the University, a three-judge panel of the
Sixth Circuit was asked to determine when the statute of limitations begins to run for a
hybrid § 301/duty of fair representation action in the context of an arbitration proceeding. 
See Schoonover, 49 F.3d at 221–22 (citing 29 U.S.C. § 160(b)). According to the Sixth
Circuit, “The better course is to permit the plaintiff claiming inadequate representation in
an arbitration to wait until there has been some adverse outcome in the arbitration before
seeking the intervention of a federal court.” Id. As the court explained, “requiring
exhaustion of the grievance process is appropriate because the arbitration award may
make the employee whole, in spite of even the most egregious union failures.” Id. at 222
(citing Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 421 (10th Cir. 1990) (per
curiam)). “To require otherwise would undermine the strong national policy favoring
nonjudicial resolution of labor disputes by penalizing those who try to resolve their disputes
through the grievance process before filing suit in federal court.” Id. The court held that
“while formal notice of a[n arbitration] decision to the grievant is not required, a formal
decision of some sort by the [arbitration] panel is required to begin the running of the
statute of limitations.” Id. at 223. 
          The University argues that under Schoonover, “formal notice is not required to start
the running of the statute of limitations.” Schoonover involved a decision to terminate
employment and a subsequent arbitration proceeding that affirmed the termination. See
id. at 221. The Schoonover court was asked to decide when the statute of limitations
began to run for a claim of unfair representation against a union in the context of an
arbitration proceeding. See id. at 221–23. The court held that “there was no formal
arbitration decision until the [arbitration] panel reduced it to writing as required by its rules.” 
See id. at 223. We do not find Schoonover inconsistent with the conclusion we have
reached in this case. We have determined that Dean Abdelsamad’s email did not provide
unequivocal notice of the University’s adverse hiring decision. The first unequivocal notice
Vanzante received of the University’s decision came from Dr. Tillinger’s letter. 
          The University also relies on DeMoranville, 933 S.W.2d at 492, arguing that this
Court would create a new rule of law and contradict Texas Supreme Court authority if it
holds that the limitations period runs from the date a claimant has reason to believe
discrimination has occurred. In DeMoranville, the Texas Supreme Court held that the
limitations period begins when an employee is informed of the allegedly discriminatory
employment decision, not when the decision comes to fruition. Id. at 493. The plaintiff in
DeMoranville had been informed before her termination that she would be terminated if she
did not return to work within one year of taking medical leave. See id. When the plaintiff
did not return to work within one year, she was terminated. See id. The supreme court
held that the limitations period began when the employee received notice of the employer’s
termination policy as applied to her and not when the employee was actually terminated. 
See id. 
          Again, we do not find DeMoranville in conflict with our conclusion in the present
case. Our holding is consistent with well-settled precedent of the United States Supreme
Court and the Texas Supreme Court holding that the limitations period commences to run
when an adverse employment decision is made official and communicated to the aggrieved
party. See Ricks, 449 U.S. at 258; DeMoranville, 933 S.W.2d at 493.
          In Cooper-Day, the fourth case relied upon by the University, the Fort Worth court
was asked to determine whether a plaintiff had timely filed her administrative complaint as
mandated by the Act. See Cooper-Day, 121 S.W.3d at 81. The plaintiff asserted gender
discrimination claims for constructive discharge and unequal pay. See id. The court held
that the plaintiff’s administrative complaint was not filed within one hundred and eighty days
after the date the alleged unlawful employment practices occurred. See id. In reaching
this conclusion, the court also noted that there was no evidence to support the plaintiff’s
constructive discharge and unequal pay causes of action on a continuing violation theory. 
See id. at 86–88.
          The University argues that under Cooper-Day, the limitations period for an
employment discrimination complaint begins when the allegedly discriminatory employment
decision has been made and communicated to the plaintiff. We agree and find that our
decision in the present case is consistent with the holding in Cooper-Day. 
          Czerwinski, the fifth case cited by the University, involved the question of whether
compliance with the filing provisions of the Act are mandatory and jurisdictional. See
Czerwinski, 116 S.W.3d at 123. In Czerwinski, the court was asked to determine the effect
of a late administrative filing under the Act. See id. at 120. The court held that a timely
filed administrative complaint was necessary to confer subject matter jurisdiction on the
trial court. See id. at 122. Czerwinski addressed the effect of noncompliance with the
provisions of the Act, see id. at 122, an issue which is well settled and undisputed in this
case. 
          In Byars, the sixth case cited by the University, the Austin court held that under the
Act, the limitations period for an administrative complaint commenced to run when an
employee was terminated and was not tolled while the employee pursued the employer’s
internal grievance process. Byars, 910 S.W.2d at 525. The University argues that under
Byars, the limitations period was not tolled on Vanzante’s claim after the University’s
decision. For the reasons discussed below, we need not address this contention to decide
the merits of this case. We therefore decline to do so. See Tex. R. App. P. 47.1.
          We are guided by the precedent of the United States Supreme Court. In Ricks, the
Supreme Court explained that the determination of when an alleged unlawful practice
occurred “necessarily must be made on a case-by-case basis.” Ricks, 449 U.S. at 258 n.9. 
The high Court also warned that “the limitations periods should not commence to run so
soon that it becomes difficult for a layman to invoke the protection of the civil rights
statutes.” Id. at 262 n.16. We conclude that the University’s decision was made official
and communicated to Vanzante on June 21, 2001, when the University’s search and
selection committee informed him that his application for employment had been denied. 
Accordingly, the limitations period did not commence to run until that date. Because
Vanzante’s administrative complaint was timely, we need not discuss whether the
limitations period was tolled after June 21, 2001. See Tex. R. App. P. 47.1.       
III. Conclusion
          The order of the trial court is affirmed.     
                                                                               _______________________
                                                                               DORI CONTRERAS GARZA,
                                                                               Justice
 
Opinion delivered and filed 
this the 17th day of March, 2005.