NOT RECOMMENDED FOR PUBLICATION
File Name: 12a0902n.06

No. 11-3345

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ROBIN HUNTLEY, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| OHIO ASSOCIATION OF PUBLIC SCHOOL | ) OHIO |
| EMPLOYEES and ECONOMIC OPPORTUNITY | ) |
| PLANNING ASSOCIATION OF GREATER | ) |
| TOLEDO, | ) |
| | ) |
| Defendants-Appellees. | ) |

Before: SILER, DAUGHTREY, and WHITE, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Robin Huntley alleges she was wrongfully terminated from her position as a Head Start Program teacher's assistant with Economic Opportunity Planning Association of Greater Toledo ("EOPA"). She followed the internal grievance process as detailed in the Collective Bargaining Agreement ("CBA") between her union, Ohio Association of Public School Employees ("OAPSE"), and her employer, EOPA. The union decided not to pursue arbitration, and Huntley believes this failure to arbitrate is a violation of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411 ("LMRDA"), the CBA, and an Ohio statute. The district court granted judgment on the pleadings in favor of the Defendants. The panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the reasons that follow, we AFFIRM.

No. 11-3345
*Huntley v. Ohio Assoc. of Public School Employees, et al.*

## I.

OAPSE and EOPA entered into a CBA that prescribes the way in which EOPA employees must bring complaints such as wrongful termination. The CBA prescribes a four-step process that includes the employee's discussion of the complaint with his or her supervisor, submission of a formal grievance in writing, and, finally, arbitration. Specifically, the final step provides, "If [the employee and the union are] not satisfied with the written response from the Executive Director, the Union and the aggrieved person *may* . . . submit the grievance to arbitration by giving written notice to the Executive Director." (emphasis added). According to OAPSE, it decided not to pursue arbitration because it had difficulty contacting Huntley and because, after conducting its own investigation, it determined her claims against EOPA were without merit.

Huntley then commenced this action in federal court against both OAPSE and EOPA, claiming that their failure to arbitrate violates the CBA, the LMRDA, and Ohio Revised Code § 2711.03. She requested an order compelling OAPSE and EOPA to conduct arbitration. The district court granted judgment on the pleadings for Defendants and also denied Huntley's motion to amend the complaint.

## II.

We review the dismissal of a complaint under Federal Rule of Civil Procedure 12(c) de novo. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

## A.

Defendant OAPSE argues that this appeal should not be heard because Huntley filed a motion for extension of time to file a notice of appeal one day after the notice of appeal was due. A district

court may grant an extension of time to file a notice of appeal regardless of whether the motion is filed late, provided the party shows excusable neglect or good cause. Fed. R. App. P. 4(a)(5)(A)(ii). Huntley claims she did not receive notice of the district court's order granting judgment on the pleadings, and the district court found this to be "good cause for delay." The district court then gave Huntley until March 31, 2011 to file a notice of appeal, and she filed the notice on March 30, 2011. Thus, the appeal is timely.

B.

The crux of this case centers on Huntley's allegation that both OAPSE and EOPA violated the LMRDA by failing to arbitrate. The LMRDA does not, however, apply in this case.

First, the LMRDA governs the relationship of labor unions and their members. It applies only to labor unions, not employers. *See Thomas v. N.Y. Cent. R.R.*, 361 F.2d 137, 145 (2d Cir. 1966) ("[T]he LMRDA regulates only the relationship between the union and its members and not that between an employer and his employees."). The district court was correct to dismiss the LMRDA claim against EOPA.

Second, Huntley has also failed to state a claim under the LMRDA against the union because the LMRDA does not provide for the relief Huntley seeks. An action against a union for failure to arbitrate should be brought under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See Tucker v. Union of Needletrades, Indust. and Textile Emps.*, 407 F.3d 784, 785-86 (6th Cir. 2005). While the LMRDA prohibits a union from hindering a member's access to courts, the district court correctly noted that "OAPSE did not interfere with Plaintiff's private right to file a claim seeking judicial enforcement of the grievance requirements in this Court. . . . Under the LMRDA,

the protection for limiting the rights of the employee does not extend to submitting cases that arise under the collective bargaining agreement to arbitration." Thus, Huntley has failed to state a claim under the LMRDA.

## C.

Without a statutory federal nexus, Huntley has failed to explain how federal jurisdiction exists for the remaining claims: the contract claim (the CBA claim) and state statutory claim.

Even if federal jurisdiction existed to resolve the CBA claim, the district court was correct to dismiss it because, based on the plain language of the CBA,[1] Huntley cannot compel the union and EOPA to arbitrate. Step four of the grievance process in the CBA provides, "If not satisfied with the written response from the Executive Director, the Union and the aggrieved person may. . . submit the grievance to arbitration by giving written notice to the Executive Director." On its face, arbitration is permissive rather than mandatory. Thus, the CBA claim against OAPSE fails.

The CBA claim against EOPA fails as well. Based on the plain language of the contract, the employer has no duty to participate in arbitration until the union and the employee submit the grievance to arbitration. OAPSE decided not to submit the case to arbitration because it believed Huntley's claim for wrongful discharge was without merit. Thus, EOPA's duty to arbitrate (if such a duty existed) was not triggered. Furthermore, Huntley is not a party to the CBA and lacks standing to seek specific performance. An employee is typically considered a third-party beneficiary to a CBA between a union and an employer. *See United Food and Commercial Workers Local 951 v.*

---

[1] The CBA was not attached to the complaint "due to its size," but Huntley refers to it as if she had attached it. We will, therefore, consider the CBA as if it had been attached to the complaint.

4

*Mulder*, 31 F.3d 365, 370 (6th Cir. 1994). The complaint does not allege third-party beneficiary status, and Huntley did not brief the standing issue at the district court level or on appeal.

Finally, the complaint alleges a breach of an Ohio Statute, which provides in relevant part:

The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement.

Ohio Rev. Code § 2711.03. Putting aside the apparent inapplicability of this statute to any case not in a "court of common pleas," this is a state law claim, and without the federal statute, the district court could not exercise jurisdiction over it.

D.

The district court was also correct to deny Huntley's request to amend the complaint. Recognizing that she likely pled a cause of action under the wrong statute, in her response to the Defendants' motions to dismiss, Huntley sought to amend her complaint to state a claim under the LMRA. A district court should grant a plaintiff leave to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend a complaint should be denied, however, when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, an amendment would be futile because the statute of limitations on the suggested LMRA claim has expired.

The statute of limitations for a claim that (1) an employer breached its obligations under the CBA and that (2) a union violated its duty of fair representation by failing to arbitrate, is six months. *Schoonover v. Consol. Freightways Corp. of Delaware*, 49 F.3d 219, 221-22, n.1 (6th Cir. 1995).

5

The statute of limitations begins to run when the employee discovers, or should have discovered, the acts giving rise to the cause of action. *See id.* at 222. In this case, the statute of limitations began to run when Huntley became aware that her grievance would not be submitted to arbitration. *See id.* at 222, n.1. The district court reasoned that the statute of limitations expired on or about November 30, 2008 – six months after Huntley became aware of her wrongful discharge claim. This is incorrect, however, as Huntley's complaint in federal court is for failure to arbitrate, not wrongful discharge.

The proper inquiry, therefore, is when did Huntley become aware, or when should she have become aware, that the union would not arbitrate her grievance? Huntley claims she was wrongfully discharged on May 30, 2008. However, it had to be on May 30, 2007, according to all the records. The CBA lays out a specific timeline for the grievance process, including a series of steps an employee must take, with a specific number of days between each step. The complaint alleges that Huntley "timely filed a grievance and has timely performed every measure under the CBA to exhaust her administrative appeals, except for arbitration." Since Huntley followed the steps outlined in the CBA and now alleges a breach of specific provisions of the CBA, it is reasonable to conclude that she was (or should have been) aware of the timeline contained in the CBA.

According to this timeline, the union had twenty days after the last step to submit the grievance to arbitration. Calculating the number of days for the entire grievance process in the CBA and assuming that each step of the process took the maximum number of allowable days, the union had until late August or early September 2008 to decide whether to arbitrate the grievance. The statue of limitations expired, then, at the latest, in February or March 2009. Huntley did not file her

complaint until May 21, 2009. The district court was, therefore, correct to deny Huntley's motion to amend her complaint.

AFFIRMED.

No. 11-3345
*Huntley v. Ohio Assoc. of Public School Employees, et al.*

**HELENE N. WHITE**, Circuit Judge, dissenting.

Because I believe that additional fact-finding is necessary to determine whether the statute of limitations expired on Robin Huntley's breach of fair representation claim against the Ohio Association of Public School Employees ("OAPSE") and her proposed amended claim against the Economic Opportunity Planning Association of Greater Toledo ("EOPA") under the Labor Management Relations Act ("LMRA"), I respectfully dissent.

Robin Huntley ("Huntley") was terminated from her position in the Head Start program at EOPA on May 23, 2007. Subsequently, Huntley followed the grievance procedure outlined in the collective bargaining agreement (CBA) between OAPSE and EOPA. Under Step 4 of the grievance procedure, there is an option for the Union and the aggrieved person, in this case, Huntley, to submit the grievance to arbitration within twenty-days if they are not satisfied with the response of the Executive Director. There are no further time restrictions regarding the arbitration process in the CBA. Although Huntley desired arbitration, the union ultimately decided not to pursue that course of action. On May 21, 2009, Huntley brought claims against OAPSE and EOPA based on their failure to conduct arbitration in this matter.

As the majority points out, Huntley incorrectly brought her claims against OAPSE and EOPA under the Labor Management Recording and Disclosure Act. Nonetheless, in its order granting the defendants' motions for judgment on the pleadings, the district court analyzed Huntley's complaint as asserting a claim against OAPSE for breach of fair representation, which is authorized under Section 301 of the LMRA. *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 682 (6th Cir. 2012). The statute of limitations for this claim is six months. *Schoonover v. Consol.*

8

*Freightways Corp. of Delaware*, 49 F.3d 219, 221 (6th Cir. 1995). Where "the breach of fair representation stems from the union's failure to bring the arbitration claim or the union's decision to abandon it before resolution," the statute of limitations begins "when the grievant knew or should have known that the union had elected to proceed no further." *Id.* at 222 n.1. This "may arise when the union takes an unequivocal position that it will not seek arbitration." *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987).

In its opinion, the district court used the following timeline to conclude that Huntley's breach of fair representation claim was barred by the statute of limitations:

> On May 30, 2007, [Huntley] tendered a grievance to her immediate supervisor . . . . Ultimately Defendant EOPA's Executive Director concurred with the decision to terminate Plaintiff on June 26, 2007, thus completing the four steps of the grievance procedure . . . . At step five, Defendant OAPSE had thirty days after the Executive Director's response to give their consent to submit to arbitration. The statute of limitations began to accrue on the thirty first day after the union failed to pursue the arbitration process on Plaintiff's behalf. Clearly more than six months elapsed before Plaintiff filed a case in federal court on May 21, 2009 . . . . The filing of a claim for breach of fair representation is time barred.

However, additional information in the record calls the district court's timeline into question. On June 27, 2007, the day after the EOPA Executive Director's decision, the president of Huntley's local OAPSE union, Martha Thames, informed EOPA that the union is "taking this grievance to arbitration." Over seven months later, on February 4, 2008, union field representative Andre Washington ("Washington") met with Huntley to discuss her grievance.

In May, 2008, Brenda Wilson-Wright ("Wilson-Wright") became the new local union president. Sometime after her election, Wilson-Wright had additional correspondence with Huntley about her grievance and classified Huntley as still in the "final stages" of the grievance procedure.

9

Wilson-Wright testified in her deposition that around May, 2008, she forwarded Huntley's paperwork, which included her request for arbitration, to Washington, presumably for the second time. During her deposition, Wilson Wright was asked: "After you sent the request for arbitration in concerning Ms. Huntley, do you recall if you had any other involvement with Ms. Huntley's grievance"? Wilson-Wright responded, "No. I didn't have anymore. Just waiting for a letter to come so if they was going to send it to arbitration I would call her, plus she would get a letter as well."

Based on Wilson-Wright's deposition, it appears that both she and Huntley were waiting for an unknown period of time after May 2008 to determine whether the union was going to proceed to arbitration on this matter. This waiting period occurred after the union had already seemingly made the decision to submit Huntley's grievance for arbitration.

As part of discovery in the instant litigation, Huntley received the following interrogatory:

> Please [sic] the name of each individual that you spoke with from the Ohio Association of Public School Employees, the time and date that you spoke with them and the subject mattter that you discussed with them.

In her response to this interrogatory, Huntley states that she contacted Washington on December 10, 2008, to inquire about the status of her arbitration. Huntley then made two additional inquiries about her arbitration on January 6, 2009 and January 22, 2009. With respect to her inquiry on January 6, 2009, Huntley states: "I talked with [Mr. Washington's secretary] at the OAPSE office . . . and requested a copy of the letter supposedly denying arbitration." Although it is clear that Huntley knew about OAPSE's decision to deny arbitration by January 6, 2009, it is unclear from the record whether Huntley knew about the union's decision prior to her initial inquiry to Washington on December 10, 2008.

10

It is also unclear based on the current record whether Huntley ***should have*** known that OAPSE was not going to pursue arbitration on her grievance prior to December 10, 2008. Although, the record indicates that on June 27, 2007, OAPSE originally decided to submit Huntley's grievance for arbitration, it appears that when Wilson-Wright was elected as the new local president of OAPSE in May 2008, the decision whether the matter would proceed to arbitration began anew. After that point, both Huntley and Wilson-Wright expected to receive correspondence from Washington about whether the arbitration would go forward. Washington attests in his affidavit that "Huntley was advised of the Union's decision [sic] not pursue the grievance and incur the costs of the arbitration." However, Washington does not state when Huntley was so advised. Further, despite the fact that OAPSE initially submitted Huntley's grievance for arbitration on June 27, 2007, Washington did not receive a letter stating that OAPSE would not pay for the costs of arbitration until almost a year later, on June 11, 2008. However, Huntley is not copied on this letter and there is no indication that she was ever informed about the union's decision at that time. Additionally, the letter was sent to Janice Case, an interim local union president who was no longer serving in that position. Wilson-Wright, the local union president at that time, was not copied on that letter and, based on her deposition testimony, never received that correspondence.

In light of the lengthy process used by OAPSE to determine whether to submit Huntley's grievance to arbitration, and the fact that the president of Huntley's local union was never informed about the final decision on Huntley's grievance, I cannot agree with the majority's determination that, based on this record, Huntley reasonably should have known prior to December 10, 2008 that

OAPSE was not going to pursue arbitration on her behalf. Accordingly, the district court should not have found Huntley's breach of fair representation claim against OAPSE time barred.

The district court also denied Huntley's request to amend her complaint to assert a breach of collective bargaining agreement claim against EOPA on the ground that any such claim would also be barred by the six-month statute of limitations. However, "[b]efore an employee may bring a [claim under § 301 of the LMRA] against an employer for dismissing him in violation of the collective bargaining agreement, the employee must first exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993). Thus, when an employee asserts claims under § 301 of the LMRA against both the union for breach of fair representation during the grievance process and the employer for breach of the collective bargaining agreement, "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, **whichever occurs later**." *Id.* (emphasis added). Therefore, although EOPA rendered its final decision with respect to Huntley's termination on June 26, 2007, the statute of limitations for Huntley's LMRA claims did not commence until the union made its final decision on whether to submit Huntley's grievance to arbitration. As mentioned above, it is unclear whether Huntley knew, or should have known, about the union's final decision not to pursue arbitration before December 10, 2008. Using December 10, 2008 as the starting point, Huntley's LMRA claim against EOPA, which would relate back to the original complaint, filed on May 21, 2009, is within the six-month limitations period. *See* Fed. R. Civ. P. 15(c)(1)(B).

12

No. 11-3345
*Huntley v. Ohio Assoc. of Public School Employees, et al.*

For the foregoing reasons, I would reverse the district court's decision that Huntley's breach of fair representation claim against OAPSE and proposed amended LMRA claim against EOPA are time barred, and remand for additional fact-finding on this issue. Accordingly, I dissent.