HELENE N. WHITE, Circuit Judge, dissenting.
Because I believe that additional fact-finding is necessary to determine whether the statute of limitations expired on Robin Huntley’s breach of fair representation claim against the Ohio Association of Public School Employees (“OAPSE”) and her proposed amended claim against the Economic Opportunity Planning Association of Greater Toledo (“EOPA”) under the Labor Management Relations Act (“LMRA”), I respectfully dissent.
Robin Huntley (“Huntley”) was terminated from her position in the Head Start program at EOPA on May 23, 2007. Subsequently, Huntley followed the grievance procedure outlined in the collective bargaining agreement (CBA) between OAPSE and EOPA. Under Step 4 of the grievance procedure, there is an option for the Union and the aggrieved person, in this case, Huntley, to submit the grievance to arbitration within twenty-days if they are not satisfied with the response of the Executive Director. There are no further time restrictions regarding the arbitration process in the CBA. Although Huntley desired arbitration, the union ultimately decided not to pursue that course of action. On May 21, 2009, Huntley brought claims against OAPSE and EOPA based on their failure to conduct arbitration in this matter.
As the majority points out, Huntley incorrectly brought her claims against OAPSE and EOPA under the Labor Management Recording and Disclosure Act. Nonetheless, in its order granting the defendants’ motions for judgment on the pleadings, the district court analyzed Huntley’s complaint as asserting a claim against OAPSE for breach of fair representation, which is authorized under Section 301 of the LMRA. Chapman v. United Auto Workers Local 1005, 670 F.3d 677, *366 682 (6th Cir.2012). The statute of limitations for this claim is six months. Schoonover v. Consol. Freightways Corp. of Delaware, 49 F.3d 219, 221 (6th Cir.1995). Where “the breach of fair representation stems from the union’s failure to bring the arbitration claim or the union’s decision to abandon it before resolution,” the statute of limitations begins “when the grievant knew or should have known that the union had elected to proceed no further.” Id. at 222 n. 1. This “may arise when the union takes an unequivocal position that it will not seek arbitration.” McCreedy v. Local Union No. 971, UAW, 809 F.2d 1282, 1286 (6th Cir.1987).
In its opinion, the district court used the following timeline to conclude that Huntley’s breach of fair representation claim was barred by the statute of limitations:
On May 30, 2007, [Huntley] tendered a grievance to her immediate supervisor.... Ultimately Defendant EOPA’s Executive Director concurred with the decision to terminate Plaintiff on June 26, 2007, thus completing the four steps of the grievance procedure.... At step five, Defendant OAPSE had thirty days after the Executive Director’s response to give their consent to submit to arbitration. The statute of limitations began to accrue on the thirty first day after the union failed to pursue the arbitration process on Plaintiffs behalf. Clearly more than six months elapsed before Plaintiff filed a case in federal court on May 21, 2009.... The filing of a claim for breach of fair representation is time barred.
However, additional information in the record calls the district court’s timeline into question. On June 27, 2007, the day after the EOPA Executive Director’s decision, the president of Huntley’s local OAPSE union, Martha Thames, informed EOPA that the union is “taking this grievance to arbitration.” Over seven months later, on February 4, 2008, union field representative Andre Washington (“Washington”) met with Huntley to discuss her grievance.
In May, 2008, Brenda Wilson-Wright (“Wilson-Wright”) became the new local union president. Sometime after her election, Wilson-Wright had additional correspondence with Huntley about her grievance and classified Huntley as still in the “final stages” of the grievance procedure. Wilson-Wright testified in her deposition that around May, 2008, she forwarded Huntley’s paperwork, which included her request for arbitration, to Washington, presumably for the second time. During her deposition, Wilson-Wright was asked: “After you sent the request for arbitration in concerning Ms. Huntley, do you recall if you had any other involvement with Ms. Huntley’s grievance”? Wilson-Wright responded, “No. I didn’t have anymore. Just waiting for a letter to come so if they was going to send it to arbitration I would call her, plus she would get a letter as well.”
Based on Wilson-Wright’s deposition, it appears that both she and Huntley were waiting for an unknown period of time after May 2008 to determine whether the union was going to proceed to arbitration on this matter. This waiting period occurred after the union had already seemingly made the decision to submit Huntley’s grievance for arbitration.
As part of discovery in the instant litigation, Huntley received the following interrogatory:
Please [sic] the name of each individual that you spoke with from the Ohio Association of Public School Employees, the time and date that you spoke with them and the subject matter that you discussed with them.
*367 In her response to this interrogatory, Huntley states that she contacted Washington on December 10, 2008, to inquire about the status of her arbitration. Huntley then made two additional inquiries about her arbitration on January 6, 2009 and January 22, 2009. With respect to her inquiry on January 6, 2009, Huntley states: “I talked with [Mr. Washington’s secretary] at the OAPSE office ... and requested a copy of the letter supposedly denying arbitration.” Although it is clear that Huntley knew about OAPSE’s decision to deny arbitration by January 6, 2009, it is unclear from the record whether Huntley knew about the union’s decision prior to her initial inquiry to Washington on December 10, 2008.
It is also unclear based on the current record whether Huntley should have known that OAPSE was not going to pursue arbitration on her grievance prior to December 10, 2008. Although, the record indicates that on June 27, 2007, OAPSE originally decided to submit Huntley’s grievance for arbitration, it appears that when Wilson-Wright was elected as the new local president of OAPSE in May 2008, the decision whether the matter would proceed to arbitration began anew. After that point, both Huntley and Wilson-Wright expected to receive correspondence from Washington about whether the arbitration would go forward. Washington attests in his affidavit that “Huntley was advised of the Union’s decision [sic] not pursue the grievance and incur the costs of the arbitration.” However, Washington does not state when Huntley was so advised. Further, despite the fact that OAPSE initially submitted Huntley’s grievance for arbitration on June 27, 2007, Washington did not receive a letter stating that OAPSE would not pay for the costs of arbitration until almost a year later, on June 11, 2008. However, Huntley is not copied on this letter and there is no indication that she was ever informed about the union’s decision at that time. Additionally, the letter was sent to Janice Case, an interim local union president who was no longer serving in that position. Wilson-Wright, the local union president at that time, was not copied on that letter and, based on her deposition testimony, never received that correspondence.
In light of the lengthy process used by OAPSE to determine whether to submit Huntley’s grievance to arbitration, and the fact that the president of Huntley’s local union was never informed about the final decision on Huntley’s grievance, I cannot agree with the majority’s determination that, based on this record, Huntley reasonably should have known prior to December 10, 2008 that OAPSE was not going to pursue arbitration on her behalf. Accordingly, the district court should not have found Huntley’s breach of fair representation claim against OAPSE time barred.
The district court also denied Huntley’s request to amend her complaint to assert a breach of collective bargaining agreement claim against EOPA on the ground that any such claim would also be barred by the six-month statute of limitations. However, “[b]efore an employee may bring a [claim under § 301 of the LMRA] against an employer for dismissing him in violation of the collective bargaining agreement, the employee must first exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement.” Robinson v. Central Brass Mfg. Co., 987 F.2d 1235, 1239 (6th Cir.1993). Thus, when an employee asserts claims under § 301 of the LMRA against both the union for breach of fair representation during the grievance process and the employer for breach of the collective bargaining agreement, “the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union’s final action or should have known *368 of the employer’s final action, whichever occurs later.” Id. (emphasis added). Therefore, although EOPA rendered its final decision with respect to Huntley’s termination on June 26, 2007, the statute of limitations for Huntley’s LMRA claims did not commence until the union made its final decision on whether to submit Huntley’s grievance to arbitration. As mentioned above, it is unclear whether Huntley knew, or should have known, about the union’s final decision not to pursue arbitration before December 10, 2008. Using December 10, 2008 as the starting point, Huntley’s LMRA claim against EOPA, which would relate back to the original complaint, filed on May 21, 2009, is within the six-month limitations period. See Fed. R.Civ.P. 15(c)(1)(B).
For the foregoing reasons, I would reverse the district court’s decision that Huntley’s breach of fair representation claim against OAPSE and proposed amended LMRA claim against EOPA are time barred, and remand for additional fact-finding on this issue. Accordingly, I dissent.