**Opinion issued July 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-12-01164-CV**

———————————

**BEAU DAVID PRICE, Appellant**

**V.**

**TEXAS ALCOHOLIC BEVERAGE COMMISSION, ALAN STEEN, JOEL MORENO, ROD VENNER, AND ANDY PENA, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-37083**

---

**MEMORANDUM OPINION**

Beau David Price sued his former employer, the Texas Alcoholic Beverage Commission ("TABC") and several officials, Alan Steen, Joel Moreno, Rod Venner, and Andy Pena (collectively "Appellees"), alleging that his termination

violated his constitutional rights of equal protection, free speech, and due course of law. The trial court granted Appellees' plea to the jurisdiction, and Price appealed, contending that the trial court erred in granting the plea because sovereign immunity does not apply in suits alleging constitutional violations. We conclude that Price failed to plead a valid constitutional claim, and, accordingly, we affirm.

## Background

Price was employed as an agent by TABC from October 3, 2007, until August 3, 2009, when he was terminated for violating the commission's off-duty employment policy and for insubordination. In late 2008, Price's then-girlfriend, Natalie Minton, reported to TABC that Price had assaulted her, and Price was placed on administrative leave while TABC investigated the allegation. Minton recanted later that year and Price returned to work on January 20, 2009.

In March 2009, Minton reported that Price had violated TABC policies by taking steroids[1] and having worked an off-duty job while he was on administrative leave following Minton's first complaint. In response, Price's then-supervisor, Sergeant Scott Zella, ordered an investigation, which Captain Rick Cruz decided would be handled by Sergeant Steven Cagle.

Price contends that, on March 18, 2009, Cruz sent an email to Andy Pena, Captain of the Office of Professional Responsibility of TABC, and copied Cagle,

_____

[1] Minton's claim that Price had taken illegal drugs was later discredited and abandoned.

2

who was several weeks from completing this second investigation, stating, "The inquiry Sgt. Cagle is looking into (Beau Price working off duty while on admin. leave) will be found to be true." Price also alleges that Cagle admitted under oath to an Administrative Law Judge that he had been advised of Price's guilt, despite lacking evidence that Price had violated TABC policy. Price also claims that "Cruz treated Price differently than he treated Hispanic TABC officers charged with extra job policy violations." In support of his allegation, Price asserts that "Lieutenant Harry Schreffler [was not disciplined when he] had, with impunity, falsified a government document and notarized Price's signature falsely." Moreover, he asserts that "Schreffler was suspended in 2010 for improperly working an extra job . . . yet was reinstated and not terminated."

Price further alleges that Cruz ordered him not to make a *Garrity* declaration,[2] but Price refused to withdraw the declaration. Price alleges that:

> Price told Cruz that he needed to confer with his attorney, who advised Price that it was improper for Cruz to instruct him to withdraw the *Garrity* preface and not to do so. Price told Cruz that on advice of counsel he would not withdraw the *Garrity*.

Price contends that because he refused to withdraw the *Garrity* declaration, "he was subjected to retaliation and discharged by Cruz's recommendation."

---

[2] *See Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616 (1967) (granting constitutional right to law enforcement officers to declare that any statement he or she has made was given under duress or coercion by a superior).

3

Price also alleges that Assistant Chief Venner ignored Price's appeal of his termination. TABC later submitted a report to the Texas Commission on Law Enforcement Officer Standards and Education, pursuant to Texas Occupations Code § 1701.452, or F-5 report, apprising the commission of Price's termination. This form originally stated that Price's termination qualified as a General Discharge, but the Administrative Law Judge later ordered that this be changed to an Honorable Discharge after the State Office of Administrative Hearings conducted a hearing on September 22, 2010.

On June 21, 2011, Price filed his original petition, claiming discrimination under the Texas Commission on Human Rights Act ("TCHRA") and violations of the Texas Constitution, Article I, sections 3, 8, and 19. Appellees filed a Plea to the Jurisdiction. The trial court granted the plea but gave Price leave to amend his state constitutional claims. Price amended his petition and Appellees filed a Second Amended Plea to the Jurisdiction. This amended plea argued that Steen is the only defendant whom Price could sue in his official capacity and even so, Price's constitutional claims against Steen fail as a matter of law. The trial court granted Appellees' Second Amended Plea to the Jurisdiction.

**Standard of Review**

A plea to the jurisdiction based on governmental immunity from suit is a challenge to the trial court's subject matter jurisdiction. *See*

*Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

When a plea to the jurisdiction challenges the sufficiency of the plaintiff's jurisdictional pleadings, we must determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The party asserting the plea must show that, "even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Anderson v. Am. Fed'n of Gov't Emps.*, *AFL–CIO*, 338 S.W.3d 709, 712–13 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). If the pleading contains facts that do not affirmatively demonstrate, but also do not affirmatively negate, jurisdiction, "it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." *Kirwan*, 298 S.W.3d at 622 (citing *Miranda*, 133 S.W.3d. at 226–27). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without

allowing the plaintiff an opportunity to amend its petition." *Smith*, 326 S.W.3d at 698 (citing *Miranda*, 133 S.W.3d at 227).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we "'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 227). When reviewing the evidence, we must take as true all evidence in favor of the nonmovant, "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* (quoting *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact issue as to the jurisdictional issue, then the fact-finder will decide that issue. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* (quoting *Miranda*, 133 S.W.3d. at 228).

### Applicable Law

Under the doctrine of sovereign immunity, parties may not sue the sovereign without its consent. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006). Sovereign immunity has two components: (1) immunity from suit, which deprives a trial court of subject-matter jurisdiction over a suit to which the State has not consented, and (2) immunity from liability, which protects the State from

judgments against it even when it has consented to suit. *See City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). Because immunity from suit defeats a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225–26; *City of Houston v. Gunn*, 389 S.W.3d 401, 402 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Public officials sued in their official capacities are protected by the same sovereign or governmental immunity as the governmental unit they represent. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007). But, Texas law generally does not shield state officials from suits for equitable relief for a violation of constitutional rights. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (explaining that State has waived sovereign immunity for suits seeking declarations regarding validity of statutes).

Nevertheless, claims for equitable relief for constitutional violations "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity." *Id.* at 373. If a plaintiff properly sues the appropriate state official for equitable relief, we must examine whether the plaintiff's petition sufficiently pleaded his claims to defeat the government's plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 226.

While a plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case

simply to establish jurisdiction[,]" the plaintiff must do more than merely name a cause of action against the state official and assert the existence of a constitutional violation. *Id.* at 223; *see generally Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering substance of equal protection claim against Secretary of State in reviewing ruling on plea to jurisdiction and explaining that Secretary retained immunity from suit unless plaintiffs pleaded "viable claim"); *Dir. of Dept. of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265 (Tex. 1980) (rejecting court of appeals' conclusion that plaintiff need only plead existence of invasion of rights to bring suit against governmental defendant); *City of Paris v. Abbott*, 360 S.W.3d 567, 583 (Tex. App.—Texarkana 2011, pet. denied) (noting that governmental defendant remains immune from suit absent plaintiff's pleading of viable claim). To state a claim within the waiver of sovereign immunity, the plaintiff must plead a facially valid constitutional claim. *See City of Houston v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

## Analysis

Price contends that the trial court erred in granting the Appellees' plea to the jurisdiction. The State responds that the trial court properly granted the plea because Price failed to plead any facially valid constitutional claims. Further, the State contends that Price may bring constitutional claims for equitable relief

8

against only TABC's director, Steen, and claims against the remaining Appellees are barred.[3] We need not determine whether Price sued the proper parties in the correct capacity, because we conclude that Price failed to plead any facially valid constitutional claim.

## 1. Equal protection

Price contends that he was deprived of equal protection because his "race [was] a substantial and motivating factor in the TABC's decision to utilize the method used to investigate and terminate his employment."

We analyze equal protection challenges under the Texas Constitution in the same way as those under the federal Constitution. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002). "Like the federal [C]onstitution, the equal-protection clause of the state [C]onstitution directs governmental actors to treat all similarly situated persons alike." *Johnson*, 353 at 503 (citing *Sanders v. Palunsky*, 36 S.W.3d 222, 224–225 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985))). To assert an equal protection claim, the plaintiff must establish that:

---

[3] Price asserts constitutional claims against Steen, TABC, Moreno, Venner, and Pena. Price's petition states that Steen is the "Director of TABC," "directs the daily operations" of TABC, and "is responsible for employing staff." As to the other defendants, Price pleaded that TABC is "a state agency," Moreno is the "Chief of Operations/Enforcement of TABC," Venner is the "Assistant Chief of Enforcement of TABC," and Pena is "Captain of the Office of Professional Responsibility ("OPR") of TABC."

(1) he or she was treated differently than other similarly situated parties; and (2) he or she was treated differently without a reasonable basis. *See Sanders*, 36 S.W.3d at 225); *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd) (critical that plaintiff allege "he is being treated differently from those whose situation is directly comparable in all material aspects").

Two employees are not similarly situated if they hold different positions. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct."). For employees to be similarly situated, "[t]he situations and conduct of the employees in question must be 'nearly identical.'" *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (citing *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917–18). And employees are not nearly identical if they have "different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records." *Id.* (citing *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917).

In his First Amended Petition, Price identified one individual who allegedly was treated more favorably. Price alleged that Lieutenant Harry Schreffler "was treated more favorably than Price" because Schreffler was suspended but later reinstated for improperly working an extra job, while Price was "terminated after

being falsely accused of working an extra job, which Price did not work and for which there was no evidence."

But Schreffler was a TABC lieutenant, and Price held a different position—agent. Because the two men held different positions, they are not "similarly situated." *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (concluding co-workers were not similarly situated because they did not perform same primary duties); *see also Grimes v. Wal–Mart Stores Tex., L.L.C.*, 505 Fed. App'x 376, 379 (5th Cir. 2013) (plaintiff's subordinate who was also a manager not a valid comparator); *Crosby v. Computer Sci. Corp.*, 470 Fed. App'x 307, 309 (5th Cir. 2012) (plaintiff's supervisor not a valid comparator).

Accordingly, we conclude the trial court did not err in granting the plea to the jurisdiction with regard to Price's equal protection claim. *See Johnson*, 353 S.W.3d at 504 ("[I]f the plaintiff fails to plead a viable claim, a governmental defendant remains immune from suit for alleged equal-protection violations.").

### 2. Free speech

Price asserts that Appellees violated his right to free speech under the free expression provision of the Texas Constitution, which, according to Price, affords greater protection for free speech than the First Amendment. In *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), the case on which Price relies, the Texas Supreme Court concluded that the free expression provision "provide[d] greater

rights of free expression than its federal equivalent" in the context of prior restraints of speech. *Id.* at 10. But the Court has consistently declined to expand that holding to other contexts. *See, e.g.*, *Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003) ("declin[ing] to hold that the Texas Constitution affords [appellant] greater rights than does the First Amendment" because appellant failed to "articulate[] any reasons based on the text, history, and purpose of Article, I, section 8 to show that its protection of noncommercial speech is broader . . . ."); *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 557–60 (Tex. 1998) (declining to expand higher standard to injunction context). Because this is not a prior restraint case, Texas law does not provide Price greater protection than federal law. Accordingly, we will analyze Price's claim under federal law.

### a. Applicable law

"The First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 675, 116 S. Ct. 2342, 2347 (1996) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1689 (1983) (speech on merely private employment matters is unprotected)). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148, 103 S. Ct. at 1690 n.7. "To prevail [on a

free speech claim], an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Umbehr*, 518 U.S. at 675, 116 S. Ct. at 2347.

Established Fifth Circuit law provides that an employee must show four elements to prevail on a First Amendment retaliation claim against an employer: (1) the employer took adverse action against the employee; (2) the speech was of public concern; (3) the interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) the speech was a motivating factor in the employer's action. In *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006), the United States Supreme Court held that in considering the second element—whether speech was of public concern—the reviewing court must shift its focus "from the content of the speech to the role of the speaker occupied when he said it." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (per curiam) (citing *Garcetti*, 547 U.S. at 418, 126 S. Ct. at 1958).

After *Garcetti*, the Fifth Circuit articulated a new analysis for First Amendment retaliation claims. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). Under the post-*Garcetti* analysis, to determine whether speech is constitutionally protected, we undertake a three-prong analysis. *Id.*; *Turner v. Perry*, 278 S.W.3d 806, 816 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

First, we determine whether the employee's speech was made pursuant to official duties. *Turner*, 278 S.W.3d at 816. Activities required by one's position or undertaken in the course of performing one's jobs are activities pursuant to official duties. *Williams*, 480 F.3d at 693. If it was made pursuant to official duties, the speech is not protected by the First Amendment, because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Turner*, 278 S.W.3d at 816 (quoting *Garcetti*, 547 U.S. at 421–22, 126 S. Ct. at 1960). Second, if the speech is not made pursuant to official duties, we determine whether it touched upon a matter of public concern. *Id.* (citing *Davis*, 518 F.3d at 312). If the speech was not made pursuant to official duties and does not touch upon a matter of public concern, the speech is not protected by the First Amendment. *See id.* Third, if the speech does pertain to a matter of public concern, we balance the employee's interest in expressing the speech with the governmental employer's interest in performing services efficiently. *Id.* (citing *Davis*, 518 F.3d at 312).

"To rise to the level of public concern, the speech at issue must have been made primarily as a citizen rather than as an employee addressing matters only of personal concern." *Denton v. Morgan*, 136 F.3d 1038, 1042 (5th Cir. 1998). (citing *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 465 (5th Cir. 1990)).

An employee's speech is not of public concern if he speaks "upon matters only of personal interest." *See Connick*, 461 U.S. at 147, 103 S. Ct. at 1690. "Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee." *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986).

### b. Analysis

Price alleged in his First Amended Petition that he exercised free speech in six instances: (1) refusing to waive his *Garrity* warning; (2) "exercis[ing] his protected speech and right not to speak;" (3) challenging the investigation of pretextual charges against him and his termination; (4) appealing the decision or recommendation to terminate his employment; (5) reporting violations of TABC policy during Cagle's investigation; and (6) reporting Schreffler's "felony offense of Falsifying a Government Document committed during the TABC investigation against Price."

### i.      Post-termination speech

Because an employee must show that protected speech was a "substantial or motivating factor in the termination," the alleged protected speech, logically, must have occurred before the termination. *See Umbehr*, 518 U.S. at 675, 116 S. Ct. at 2347. The record reflects that when appealing his termination to Venner, Price

reported "TABC policy violations committed during the investigation" and "a felony offense of Falsifying a Government Document by Lieutenant Schreffler." Price first made both allegations during his appeal of the termination; in other words, they were made after he was terminated and, for that reason, could not have been a substantial or motivating factor in the termination.

Similarly, Price's speech challenging the investigation of pretextual charges against him and his termination, as well as his appeal of the decision to terminate his employment occurred only after he was terminated. Accordingly, this speech could not have been a substantial or motivating factor in Price's termination.

Price also alleges that he exercised free speech when "exercise[ing] his protected speech and right not to speak." But Price failed to allege any additional detail regarding this purported constitutional violation, and we therefore cannot conclude that it occurred before his termination.

In short, five of six claimed instances in which Price alleges he exercised free speech occurred *after* his termination. Because speech made after Price's termination could not have been a substantial or motivating factor in Price's termination, we hold the trial court did not err in concluding that Price's post-termination exercise of free speech could not defeat the State's plea. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601, 605 (5th Cir. 2001) (holding summary judgment on free speech claim proper because appellant failed to

"demonstrate[e] that her speech motivated her discharge" or show a causal connection between "alleged retaliatory motives and her adverse employment action"). Further, we note that the Fifth Circuit affirmed the dismissal of Price's federal claims on the same basis. *See Price v. Steen*, No. 12-50386, 509 Fed. App'x 361, 362 (5th Cir. Jan. 29, 2013) (holding "Price did not allege in his complaint that any falsified records [which he contends were the subject of one instance of protected speech] were the cause of his discharge and, in fact, alleged that the documents were falsified after he had been discharged"), *cert. denied*, 134 S. Ct. 235 (Oct. 7, 2013).

### ii. *Garrity* declaration

To determine whether Price's *Garrity* declaration is constitutionally protected, we first determine whether Price made the declaration pursuant to official duties. *See Turner*, 278 S.W.3d at 816. "Activities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams*, 480 F.3d at 692. In determining whether speech was pursuant to an individual's official duties, courts review a number of factors, none of which is dispositive: the employee's formal job description; whether the employee spoke on the subject matter of his or her employment; whether the employee raised complaints or concerns up the chain of command; and whether the speech resulted from special

knowledge gained as an employee. *See Charles v. Grief*, 522 F.3d 508, 513–14 (5th Cir. 2008); *Davis*, 518 F.3d at 313; *Williams*, 480 F.3d at 693–94.

Price contends that when Captain Cruz ordered Price to not make the *Garrity* declaration, Price refused to withdraw his *Garrity* declaration. "Price told Cruz that he needed to confer with his attorney . . . [and] that on advice of counsel he would not withdraw the *Garrity*." We conclude that Price was not speaking pursuant to his official duties as a TABC employee when he made these statements because the statements did not relate to his job duties and were not undertaken in the course of performing his job. *Cf. Davis*, 518 F.3d at 313 ("[W]hen a public employee raises complaints or concerns up the chain of command at his workplace *about his job duties*, that speech is undertaken in the course of performing his job." (emphasis added)).

Because Price's statements were not made pursuant to official duties, we turn to whether the speech touched on a matter of public concern. *See Turner*, 278 S.W.3d at 816. In determining whether speech touches on a matter of public concern, we consider the content, context, and form of the speech and also evaluate whether the speech "inform[s] the populace of more than the fact of an employee's employment grievance," was "made against the backdrop of public debate," and was not made "in furtherance of a personal employer-employee dispute." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186–87 (5th Cir. 2005). Here, we conclude

18

Price's speech regarding his *Garrity* declaration was not of public concern because Price communicated that speech only to Cruz and only in the context of an employment dispute. *See Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817–18 (5th Cir. 2000) (holding that high school principal's private memos to Board concerning her unfavorable performance evaluations were not matter of public concern); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (concluding public employee's speech was in private context because it "was made in the setting of a private employee-employer dispute," rather than a publicized dispute); *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993) (finding that although speech concerned police misconduct, which was of public concern, plaintiff's speech was private in nature because its focus was on misconduct "only insofar as it impacted his wish to continue his investigation"); *cf. Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 571 (5th Cir. 2004) (holding speech was of public form because plaintiff "made his comments to a newspaper reporter, and [his] statements make it clear that he understood that his statements were to be used in a published article").

Because Price's speech regarding the *Garrity* declaration was not of public concern, and all of the other allegedly protected speech for which he claims to have been terminated occurred post-termination, we hold that Price failed to plead a free

19

speech claim. Accordingly, we conclude that the trial court did not err in granting the plea to the jurisdiction on that claim.

### 3. Due course of law

Price contends that he was denied due course of law because Appellees deprived him "of protected, objective interests in the TABC policies, a fair and accurate investigation not based on known falsehoods, and a right to be free from discipline for false and defamatory accusations and alteration of government records."

The due course of law guarantee of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law of the land." TEX. CONST. art. I, § 19. "While the Texas Constitution is textually different [from the federal due process clause] in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). "As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Id.*

A plaintiff's due-course-of-law claim requires that the plaintiff have a vested property interest at stake. *Combs v. City of Webster*, 311 S.W.3d 85, 92 (Tex.

App.—Austin 2009, pet. denied) (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560–62 (Tex. 1985)).  A protected property interest in employment exists only when an employee has a "legitimate claim of entitlement" to the employment.  *Trostle v. Combs*, 104 S.W.3d 206, 211 (Tex. App.—Austin 2003, no pet.) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–74, 92 S. Ct. 2701, 2709 (1972)).  "The employee must have more than an abstract need, desire, or unilateral expectation" of a property interest.  *Id.* (citing *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709).

"The presumption that employment in Texas is at will is difficult to overcome."  *Id.*  "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."  *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  "Any modification of at-will employment status must be based on express rather than implied agreements."  *Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App.—Austin 1995, writ denied).  If the government has agreed to fire public employees only "for cause," they have a property interest in continued employment.  *See Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 353–54 (Tex. 2007) (concluding administrative policies and procedures manual provided expectation in continued employment except for just cause was "property interest of which employees may not be deprived without due process").  Whether the government

has agreed to fire only for cause is determined by an examination of the particular statute, ordinance, or government entity's rules. *Id.* "Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question." *Bishop v. Wood*, 426 U.S. 341, 345, 96 S. Ct. 2074, 2077 (1976).

The availability of hearings and grievance procedures alone do not create a property interest in employment. *Wiland*, 216 S.W.3d at 353; *Byars*, 910 S.W.2d at 524 (citing *Renken v. Harris Cnty.*, 808 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1991, no writ)). Moreover, "a limitation on at-will employment 'cannot simply be inferred.'" *Wiland*, 216 S.W.3d at 354 (quoting *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006)). "In the context of public employment, any ambiguity in the grant of a property interest in employment is resolved in favor of the state." *Byars*, 910 S.W.3d at 523 (citing *Batterton v. Tex. Gen. Land Office*, 783 F.2d 1220, 1223 (5th Cir. 1986)).

Price does not plead the existence of an express agreement that he could be terminated only for cause. Instead, Price pleaded only that "TABC and Price had a 'mutually explicit understanding' that employees would be fired only for cause, as noted by the investigation into the claims rather than the summarily firing of Price." The fact that the investigation was conducted, alone, is insufficient to defeat a jurisdictional plea, because entitlement to hearings, grievances, and other

similar procedures alone does not create a property interest in employment. *See Wiland*, 216 S.W.3d at 353–54. Nor can we infer from Price's pleadings that his employment status required a finding of cause for termination. *See id.* at 354. Because Price did not plead a property interest in employment, we hold that Price failed to sufficiently plead a due course of law claim. *See Byars*, 910 S.W.2d at 524 ("Because the existence of grievance procedures alone does not create substantive property rights or alter an employee's at-will status, [appellant] had no protected property interest in her employment that would entitle her to move procedural protection than she received."). Accordingly, we conclude that the trial court did not err in granting the plea to the jurisdiction with regard to Price's due course of law claim.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.